[Civ. No. 40507. Second Dist., Div. One. Oct. 31, 1973.]

MAX FACTOR & CO., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

8

Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., and Bert A. Lewis for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

THOMPSON, J.—This is an appeal from a judgment denying appellant's claims for refund of California franchise taxes paid for the years 1952 through 1960. Accepting respondent Franchise Tax Board's own administrative interpretation of applicable law as embodied in its operations division work sheet 1075, we reverse the judgment.

The controversy, which is the case at bench, involves the narrow but complex problem of the determination of the extent of taxability of distributions made by foreign subsidiaries to a California-based parent corporation where income of the subsidiaries has already been included within the measure of California tax by reason of a statutory allocation to this state, and where the subsidiaries have also paid taxes measured by the same

income to the nations of their domicile. Commendably, the parties have assisted in the resolution of this problem by a comprehensive stipulation of facts embodied in part in a pretrial order.

Appellant (Taxpayer) is a Delaware corporation doing business in California. In the years in question, it had three subsidiary corporations operating in foreign countries which, for the purpose of convenience, are identified as "London," "Italy," and "France." In determining the measure of California franchise tax, Taxpayer and its subsidiaries were properly treated as "engaged in a single unitary business." (See Rev. & Tax. Code, §§ 25101, 25102; *Edison California Stores* v. *McColgan,* 30 Cal.2d 472, 479-480 [183 P.2d 16].) The single unitary business concept requires that operating business income be calculated disregarding the separate identity of the members of the corporate family. Operating business, or "unitary," income of the group attributable to California is determined by a "three factor formula" employing the ratio of property, payroll, and sales within and without the state to total unitary income (or by similar formulae not here employed). Income other than operating income, such as dividends, is not apportioned but is allocated within and without California on the basis of the business situs of the recipient. Thus dividends received by Taxpayer from its foreign subsidiaries are treated as entirely California income and are added to the attributed portion of unitary income to determine the California measure of franchise tax.

In each of the years 1952 through 1960, unitary income of Taxpayer and its subsidiaries, London, Italy, and France, was determined by the three factor formula. Taxpayer received distributions from London in the years 1952 through 1960, and from Italy in the years 1955 through 1960, but none from France. As the parties have done in their stipulation, we recite the manner of computation of Taxpayer's California income for franchise tax purposes for the year 1953 as typical of all years involved. In that year, the total unitary income of Taxpayer and its subsidiaries was $2,693,252. Taxpayer received and reflected on its separate books of account $1,681,830. Total unitary income apportioned to California was $918,157. Of that amount, $658,916 is attributable to amounts earned by Taxpayer in California as reflected on its books. The remaining $260,141 is income earned by London but apportioned to California by the unitary business concept. In 1953, Taxpayer received a dividend from London in the amount of $301,869. Respondent board computed Taxpayer's 1953 taxable income by adding the $918,157 and the $301,869. It thus included in the measure of tax both the $260,141 of London income attributed to California by the unitary business theory and the $301,869 paid as a distribution by London to Taxpayer. The Revenue

and Taxation Code (then § 8, subd. (h) and now § 24402) requires that in determining taxable income, there be deducted "[d]ividends received . . . from income which has been included in the measure of [franchise] taxes. . . ." Respondent allowed such a deduction but in a limited form. Respondent treated as a dividend paid from income previously included in the measure of California tax only so much of the $301,869 as was equal to the ratio of income attributed from London to California ($260,141) to total income of London ($986,981). In 1953, London paid British income tax of $479,746, which was neither deductible in determining the net income measure of California tax nor a credit against that tax. Respondent board's computation of dividends paid from income taxed in California treated the British tax as proportionately chargeable to income allocated and not allocated to California. It thus allowed only $79,563 (26.357 percent of the $301,869 distribution from London to Taxpayer) as a deduction for a dividend with its source in income already included within the measure of California tax although $260,141 had been allocated from London to Taxpayer and included within the measure for the same year.

Respondent board's computation of the deduction for dividends paid out of income taxed in California is contrary to the manner of computation required by operations division work sheet 1075,[1] a form supplied by respondent as a "dividend work sheet." That form provides a method of determining the percentage of a dividend paid by a subsidiary to a California corporation which is to be treated as having come from income included within the measure of California tax. It is framed in two columns, one headed "Total" and the other headed "California." The deductible portion of the dividend is the percentage which the ultimate "California" figure bears to the ultimate "Total" figure. Leaving aside adjustments which are not material to the case at bench and inserting the amounts here appropriate, the form, if completed properly for 1953, indicates:

|  | Total | California |
|---|---|---|
| Net Income [London] | $986,981 | $260,141 |
| Less: Foreign and domestic income tax | 479,746 | xxxx |
| . . . . . . . . | | |
| . . . . . . . . | | |
|  | $507,235 | $260,141 |

The "xxxx" appearing in the "California" column appears also at that line on respondent's form work sheet 1075. Use of the work sheet as a formula

---

[1]The dissenting opinion implies form 1075 was modified for the years here involved. Respondent so states in its brief but without support in the record.

for computation results in the figure of 51.286 percent as the percentage of the London distribution treated as paid from London income included within the measure of California tax. The resulting deduction is $154,817 rather than the $79,563 allowed by respondent. The difference arises because respondent's form 1075 charges foreign taxes only against the total income of the subsidiary component of the formula, leaving the California component undiminished by foreign taxes, while in the case at bench respondent has charged that tax proportionately against the total and the California columns.

While contrary to its own work sheet, respondent's method of computation of the deductible portion of dividends employed in the case at bench complies with an administrative decision of the State Board of Equalization. That decision was rendered in *Safeway Stores, Inc.,* a case ultimately reaching the California Supreme Court (*Safeway Stores, Inc.* v. *Franchise Tax Board,* 3 Cal.3d 745 [91 Cal.Rptr. 616, 478 P.2d 48]). No issue involving computation of dividend deduction as affected by foreign taxes was raised in the Supreme Court, however.

Respondent board assessed deficiencies in franchise tax for the years here in question. Appellant paid the assessments under protest and filed claims for refund to recoup them. When respondent denied the claims, appellant commenced the action which is the case at bench. The trial court having found against appellant, it contends here, as it did at trial, that: (1) Distributions received from its subsidiaries, to the extent they are traceable to subsidiary income already allocated in that year to California for tax purposes, are not dividends but rather payments in accord with an adjustment of intercompany accounts to reconcile them to California tax treatment; and (2) the deduction from income for dividends received during the year declared from income which has been included in the measure of California tax should be computed as provided in respondent's form 1075.

Taxpayer's first contention is precluded by statute. Gross income for California franchise tax purposes is defined by Revenue and Taxation Code section 24271 to include "dividends." Section 24495 of the same code defines a dividend as a distribution made by a corporation to its shareholders out of earnings and profits. Here the sums which Taxpayer seeks to exclude from its gross income and treat as payments to comply with an adjustment in intercompany accounts are stipulated to be distributions made by subsidiary corporations to their California corporate parent-shareholder. On the facts before us, those sums are paid from earnings and profits of the subsidiaries unless application of the unitary business

concept to the corporate group either requires that the separate identities of the members be disregarded for the purpose of dividend distribution as it is for measure of tax, or the concept mandates that adjustments be made to treat the attributed income of the individual corporations as that of the parent.

The first alternative has been considered by our Supreme Court. Faced with the issue, the high court rejected the proposition that it is permissible to treat the combined report of income of the corporate group necessary to the computation of unitary income attributed to California as the equivalent of a consolidated return which treats the corporate family as a single entity for tax purposes. (*Safeway Stores, Inc.* v. *Franchise Tax Board, supra,* 3 Cal.3d 745, 751-752, 754.) The second alternative is contrary to the purpose and method of Revenue and Taxation Code sections 25101 and 25102. Unlike the federal statutory scheme of taxation of related entities, which permits adjustment by the taxing authority of individual transactions between a parent and subsidiaries so as to reflect true income of each (Internal Rev. Code, § 482 [26 U.S.C. § 482]), the California statutes attempt, by application of a formula, to allocate income of the combined group to activity within and without the state. Thus, under the federal scheme, it is necessary to adjust the income and expense of each entity's books to reconcile them to the reallocation of income and expense made for income tax purposes. (See e.g., Code of Fed. Regulations, § 1.482-1 (d) (4).) But no such adjustment is required in California where the entire combined income of the corporate group is the base, subject to attribution within and without the state, and no allocation of individual transactional items within the controlled group is made.

Taxpayer's second contention stands on a much firmer base than does its first. The same pronouncement of our Supreme Court, which precludes tax treatment of the corporate family as a single taxpayer, also states that only income which has not previously been taxed by California may be included within the eventual measure. (*Safeway Stores, Inc.* v. *Franchise Tax Board, supra,* 3 Cal.3d 745, 752.) In our high court's view, that objective is accomplished by the deduction from income provided for in the Revenue and Taxation Code (at one time § 8, subd. (h), now § 24402) for dividends received during the income year declared from income which has been included within the measure of franchise taxes.[2]

---

[2]Revenue and Taxation Code section 25106 now provides that distributions paid by one entity of a unitary business to another are to be disregarded entirely in computing taxable income to the extent paid out of income of the unitary business. The new statute declares, however, that it is to have no effect upon pending litigation.

■   The deduction for dividends paid from income otherwise subject to California franchise tax must be computed in a manner which satisfies the objective declared by our Supreme Court. The theory adopted by respondent board in the case at bench runs counter to that objective wherever the foreign subsidiary, whose income has been attributed to California by the unitary concept, has itself paid foreign taxes not deductible from or available as a credit against California tax. Respondent's theory charges a pro rata portion of those foreign taxes against income which has, by our law, been attributed to California. To the extent of that charge, therefore, income included within the measure of California tax can never be repatriated to the state without being included a second time in the measure of California tax.[3]

The proper procedure of computation is suggested by our Supreme Court in discussing the deduction provided in Revenue and Taxation Code section 24402. The high court states: "Its purpose is to prevent the imposition of a second tax upon the stream of income leading to the dividend." (*Great Western Financial Corp.* v. *Franchise Tax Board,* 4 Cal.3d 1, 6 [92 Cal.Rptr. 489, 479 P.2d 993].) The California stream of income of a California corporation with foreign subsidiaries includes income of the parent and subsidiaries which is incorporated within the measure of California tax by the unitary business concept. Conversely, the foreign stream of income is that portion of subsidiaries' income not attributed to California. Logically, foreign taxes must be charged against the foreign stream. Otherwise, the artificiality inherent in attributing taxable income to California where actual income accrues elsewhere is compounded.   ■   Artificial attribution of income of a unitary business is a satisfactory method of determining the otherwise exceedingly difficult problem of distinguishing income earned within and without the state. Including foreign income within the measure of tax to increase tax impact while at the same time studiously avoiding application of the stream of income theory so as to reduce a deduction for dividends otherwise permitted by law is not only inconsistent but is also unfair and counter to the declared purpose of the dividend deduction.

The impropriety of charging foreign taxes in a fashion which reduces income previously included in the measure of California tax and available

---

[3]Assume a foreign subsidiary with $1,000 in income of which $500 is attributed to California by the unitary business concept. Assume a foreign tax of $500 and a dividend of $500. On respondent's theory, only one-half of the dividend is treated as having its source in income included within the California measure, and $250 previously taxed by California by the unitary business concept is taxed a second time as a dividend. That methodology is condemned by our Supreme Court in *Safeway Stores, Inc.* v. *Franchise Tax Board, supra,* 3 Cal.3d 745, 754.

for distribution as a dividend deductible to the recipient has been recognized by respondent board although not in the case at bench. In its operations division work sheet 1075, respondent administratively provided a method for computation of the deductible portion of a dividend paid by a subsidiary corporation. In constructing a computation of the percentage of a dividend the deductibility of which is based upon the total income of the foreign subsidiary and its income attributed to California, foreign taxes are treated as a deduction against the entire income but not against California attributed income. While operations division work sheet 1075 may not provide the full measure of relief necessary to fulfill the declared purpose of the Revenue and Taxation Code section 24402 deduction, we do not reach that issue because Taxpayer has not asserted the invalidity of the administratively declared method of computation. Rather, in its alternative contention, it asserts that the method should be followed.

Respondent argues that the action of our Supreme Court in *Safeway Stores, Inc.* v. *Franchise Tax Board, supra,* 3 Cal.3d 745, supports the position asserted by it in the case at bench, and that in any event Taxpayer has failed in its burden of establishing error in the method of assessment employed by respondent. Neither argument is persuasive.

Whatever may have been the situation in *Safeway Stores, Inc.,* when the tax controversy was being considered administratively by the State Board of Equalization, the issue of what impact taxes paid by a foreign subsidiary has upon the dividend deduction of Revenue and Taxation Code section 24402 or its predecessor section was not before our Supreme Court in *Safeway* and was apparently not considered by it. To the contrary, the rationale of the decision and its language indicate that respondent's theory is incorrect.

■ Unquestionably, one seeking a refund of taxes paid has the burden of establishing error in the process by which the government collecting the taxes assessed them. But that burden is one of presenting facts which, when applied to applicable law, establish that the assessment was improper. Difficulty of legal analysis or obscurity in the law do not add to the burden. Here the facts necessary to our decision are in the record. The uncertainties which beset us are legal, not factual.

■ We thus conclude that, in the years before us, pertinent provisions of the Revenue and Taxation Code required that distributions of a subsidiary corporation be treated as dividends includable within the gross income of a recipient corporation for the purpose of the California franchise tax although the distributions are paid from income which has itself

been included in the measure of California tax by reason of the unitary business concept. We conclude also that where the subsidiary paying the dividend has paid foreign taxes measured in part by income attributed to California and in part by income which has not, the source of the dividend in income of the subsidiary included within the measure of California tax is not to be reduced by foreign taxes where the nonattributed portion of the foreign subsidiary's income is equal to or greater than the foreign tax. Since Taxpayer has conceded that respondent's operations division work sheet 1075 accomplishes that purpose in the case at bench, its deduction for dividends previously taxed should be computed in accord with that form.

The judgment is reversed.

Lillie, J., concurred.

**WOOD, P. J.**—I dissent. I would follow the decision in *Safeway Stores, Inc.* v. *Franchise Tax Board,* 3 Cal.3d 745 [91 Cal.Rptr. 616, 478 P.2d 48], and would affirm the judgment of the trial court herein. In that case dividends were received from subsidiaries in a foreign country (Canada) and "Most of such dividends were received from Canadian subsidiaries, which did business only outside California." In the present case, dividends were received from subsidiaries in foreign countries, including England. The factual background of the *Safeway* decision (i.e., single unitary business and foreign dividends) was the same as the factual background of the present case. The *Safeway* decision set forth a detailed apportionment formula for computing taxes under the factual circumstances of that case which included dividends, of a single unitary business, received from subsidiaries in a foreign country. In the majority opinion in the present case it is stated that in the *Safeway* case the issue of what impact taxes paid by a foreign subsidiary has upon the dividend deduction of Revenue and Taxation Code section 24402, or its predecessor section, was not before the Supreme Court and apparently was not considered by it. Since the opinion in *Safeway* states that most of the dividends were from Canadian subsidiaries, it is thereby indicated that foreign dividends were a major subject therein for application of the apportionment formula set forth in the opinion. It would seem that the formula set forth in *Safeway* which determined the taxes to be paid by Safeway on foreign dividends should also be applicable in determining taxes to be paid by plaintiff Max Factor herein on foreign dividends.

In the present case, plaintiff Max Factor and its subsidiaries were engaged in a single unitary business, and the distributions to plaintiff from the subsidiaries were designated "entirely as dividends" in their books and records. Appellant Factor argues that the "dividends" were "not divi-

dends at all"; that although the distributions were paid to plaintiff in the "form" of dividends, they should be treated as adjustments of inter-company accounts. As said in *Pacific Tel. & Tel. Co.* v. *Franchise Tax Bd.*, 7 Cal.3d 544, 556 [102 Cal.Rptr. 782, 498 P.2d 1030], the court in *Safeway* determined that dividends received by a domiciliary corporation from subsidiary corporations engaged in a unitary business were includable in the computation of income for tax purposes. In the present case, the defendant tax board properly included the dividends or distributions in its computations in accordance with the *Safeway* case. (This is in accord with the conclusion in the majority opinion that the distributions from the subsidiaries be treated as dividends.)

Appellant Factor asserts, however, that even if the "dividends" are taxable by California, computation of the dividend deduction did not properly take into account the British income tax.

In the present case, it appears that the Franchise Tax Board determined the dividend deductions on a basis whereby "a portion of the British income taxes which bears the same ratio to the total British income tax as the California net income bears to the total net income should be deducted from the California net income in order to arrive at the California earnings and profits for purposes of computing the 1953 dividend deduction."

On that basis it was calculated that $260,141 (the net income of London apportioned to California) was 26.357 percent of $986,981 (the total net income of London). (That is $\frac{\$260,141}{986,981}$ or 26.357 percent.) Then it was calculated that 26.357 percent of the amount distributed by London to plaintiff ($301,869) was $79,563. The $79,563 was the amount of the dividend deduction allowed. It thus appears that in the numerator of the fraction $\frac{(260,141)}{(986,981)}$ defendant included only the portion of London's unitary income that had been apportioned to the measure of California tax (in determining the amount of taxable dividend). The defendant, in so computing the taxability of dividend income, prorated the British income taxes according to the ratio which California net income from "London" (that was subject to British taxes) bore to "London's" total income that was subject to British taxes. In computing the dividend deduction, the defendant, pursuant to section 24402 of the Revenue and Taxation Code, deducted British income taxes from both the numerator and denominator of the fraction above mentioned.

Appellant argues that said percentage (26.357) should have been determined in the following manner: From the total net income of London ($986,981) subtract the foreign and domestic tax ($479,746) paid by "London" to Great Britain, leaving a remainder of $507,235. Then, ex-

press the percentage as the ratio of $260,141 to $507,235, or 51.286 percent. (That is $\frac{\$260,141}{507,235}$ or 51.286 percent); and use that percent (51.286) in the computations rather than 26.357 percent. Thus, appellant asserts in effect that proper allowance was not made for British income taxes in the computations, and that there was double taxation.

In the *Safeway* case, *supra,* (3 Cal.3d at pp. 749-750), it was said: "Under section 6 of the Bank and Corporation Franchise Tax Act (act) dividends received on stocks are includable in gross income. However, section 8 provides in subdivision (h)(1) that in computing net income a deduction shall be allowed for 'Dividends received during the income year declared from income which has been included in the measure of the tax imposed by this act upon the . . . corporation declaring the dividends. . . .' The purpose of the section 8, subdivision (h), dividend deduction is to avoid double taxation *at the corporate level* of income which has already been subjected to California taxation in the hands of the dividend-declaring corporation."

In the present case it was stipulated that in computing the dividend deductions, the Franchise Tax Board utilized a formula which the Board of Equalization adopted in *Appeal of Safeway Stores, Incorporated,* and used a "work sheet devised by the Franchise Tax Board known as form OD 1075 (now FTB 6875)"; and that "This *Appeal of Safeway Stores* is the same case as *Safeway Stores, Inc.* v. *Franchise Tax Bd.,* 3 Cal.3d 745, 753-755." The Franchise Tax Board states that the "worksheet" was on a form OD 1075 which bore an "imprint" date in 1958; in the appeal to the Board of Equalization in the *Safeway* case, the board noted that the Franchise Tax Board had revised its method of computing section 8, subdivision (h), deductions after said appeal had been filed; under such revision, foreign income taxes are deducted in computing total earnings and profits, and for deduction purposes a portion thereof is deducted in computing California earnings and profits; form OD 1075 was adapted to conform to such revision; and the previous OD 1075 worksheet was not used in computing the dividend deduction herein. In any event, it appears that the amount of dividends taxable and the amount of deductions allowable were determined in accordance with the *Safeway* case.

In my opinion the *Safeway* decision is determinative of the present case, and the judgment herein should be affirmed.

A petition for a rehearing was denied December 29, 1973. Wood, P. J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied January 16, 1974. Mosk, J., and Clark, J., were of the opinion that the petition should be granted.